# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:01 CR 98 |
| | ) | |
| TERRAUN PRICE | ) | |

## OPINION AND ORDER

Defendant Terrauan Price has moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), as a result of Amendment 750 to the United States Sentencing Guidelines. (DE # 1346.) Mr. Price was found guilty of conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846. At the time of Mr. Price's original sentencing, his guideline offense level was found to be 43, and criminal history category IV, which corresponded to a guideline range of life imprisonment. The court sentenced Mr. Price to a life term.

The original presentence report ("PSR") used when Mr. Price was sentenced concluded that he was "responsible (as it relates to Guideline calculation purposes), for conspiring to distribute in excess of 1.5 kilograms of crack cocaine." (PSR at 12; DE # 1247-1 at 12.) At the time of his sentencing, any consideration as to how greatly in excess of 1.5 kilograms he bore responsibility was unnecessary, because the sentencing guidelines set a quantity of 1.5 kilograms of crack cocaine as the threshold for the maximum base offense level of 38. *See* U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2003). Mr. Price's adjusted offense level was 43 as the result of increases for his supervisory role in the distribution conspiracy and firearms possession.

Mr. Price moved for a reduced sentence in 2009 after the United States Sentencing Commission promulgated Amendment 706, which, generally speaking, lowered the sentencing range for offenses involving crack by two levels. (DE # 1130.) As the result of Amendment 706, a quantity of 4.5 kilograms of crack cocaine became the threshold for the maximum base offense level. The court denied that motion after determining that Mr. Price was responsible for in excess of 4.5 kilograms of crack, and therefore, he was not eligible for a sentence reduction. (DE # 1209.) Mr. Price appealed, and the United States Court of Appeals for the Seventh Circuit affirmed this court's decision. (DE # 1320); *see also United States v. Davis,* 682 F.3d 596, 617 (7th Cir. 2012).

Mr. Price has now moved for a sentence reduction under Amendment 750.[1] (DE # 1346.) Amendment 750 raised the threshold for the maximum base offense level of 38 to 8.4 kilograms of cocaine base. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2011). The court is authorized to reduce a sentence only when a defendant's sentence is "based on a sentencing range that has subsequently been lowered by the Sentencing Commission" and the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The relevant policy statement here provides: "A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2) if . . . [a]n amendment listed in

---

[1] The court requested an addendum to the PSR from the United States Probation Office. (DE # 1240.) The United States Probation Office concluded that Mr. Price is not eligible for a reduction. (DE # 1247.)

subsection (c) does not have the effect of lowering the defendant's applicable guideline range." U.S. SENTENCING GUIDELINES MANUAL § 1B1.10(a)(2)(B) (2012).

In his current motion, Mr. Price argues that he is entitled to a reduction under Amendment 750 because the court's previous finding, made in its order denying Mr. Price's motion under Amendment 706, that Mr. Price was responsible for in excess of 4.5 kilograms of crack (DE # 1346 at 5), puts Mr. Price's base offense level at 36. Under the amended guidelines, a defendant responsible for at least 2.8 kilograms of crack cocaine, but less than 8.4 kilograms of crack, is assigned a base offense level of 36. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(2) (2012). As the government points out in its brief in opposition to Mr. Price's motion, however, Mr. Price's argument is based on the assumption that Mr. Price was found to be responsible for exactly 4.5 kilograms. (DE # 1349). Neither this court (DE # 1209 at 4-5 ("In short, the court has no trouble concluding that the evidence of record in this case establishes that it was reasonably foreseeable to Mr. Price that distribution of a quantity *in excess* of 4.5 kilograms of crack cocaine occurred, and that he is responsible for that quantity." (emphasis added))), nor the Seventh Circuit, *see Davis,* 682 F.3d at 617 ("There was ample evidence from which the district court could conclude that Price was accountable for *at least* 4.5 kilograms of crack cocaine." (emphasis added)), concluded that Mr. Price was responsible for exactly 4.5 kilograms of crack.

The issue for purposes of determining Mr. Price's current motion, therefore, becomes whether Mr. Price is responsible for 8.4 kilograms or more of crack cocaine.

That amount, as noted above, is now the threshold for the maximum base offense level of 38. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2011). The government argues that Mr. Price is responsible for that threshold amount. (DE # 1349 at 2-3.) In his motion, Mr. Price does not directly address this issue. (DE # 1346.)

In its order denying Mr. Price's motion for a reduced sentence under Amendment 706, the court discussed the conspiracy that Mr. Price was a part of and the extent of Mr. Price's involvement in that conspiracy:

> The conspiracy of which Mr. Price was a member, as has accurately been pointed out by the Court of Appeals, sold a quantity of drugs which easily "eclipsed 16.9 kilograms of crack cocaine." *Hall*, 600 F.3d at 876. As noted, at his sentencing the court found that the evidence showed that Mr. Price was responsible [for] "*a great deal more* than 1.5 kilograms of crack cocaine base." (Tr. of October 8, 2003, sentencing hearing at 89) (emphasis added). The court prefaced that conclusion by observing that it was "reasonably foreseeable . . . to this defendant, that there was large quantities and *kilo quantities* of controlled substances, in particular crack cocaine base involved in this drug conspiracy." (*Id.*) (emphasis added.) Underlying these findings were facts such as these, to provide only a few examples. Mr. Price was a member of the conspiracy from at least 1996 through 2001, and likely longer than that. Moreover, he was not just a street-level member, he was a high-ranking member and close associate of Bobby Suggs, the conspiracy's head, and the court found him responsible as a manager or supervisor of the conspiracy. (*Id.* at 91.)
>
> In that role, he took both supplies of drugs, and messages, from Suggs to street-level distributors on "the hill" (*Id.* at 89, 91), the primary area in which the drugs were sold. As explained in the original PSR, according to Marvin Childress, one of the defendant co-conspirator/dealers who cooperated in the investigation, Suggs did not supply the dealers "hand-to-hand," Price performed this function. Thus, Mr. Price was familiar with the number of dealers, and the types and quantities of drugs they were distributing. In addition, as part of the inner circle, he used his residence as a place where Suggs could "cook" powder cocaine into crack. (*Id.* at 89.) According to statements made by individuals supplying the powder cocaine for cooking, such as Thomas Unzueta and Anthony Evans, from at least 1996 they were

4

supplying kilogram quantities to Suggs. In short, the court has no trouble concluding that the evidence of record in this case establishes that it was reasonably foreseeable to Mr. Price that distribution of a quantity in excess of 4.5 kilograms of crack cocaine occurred, and that he is responsible for that quantity.

(DE # 1209 at 3-5.)

The Seventh Circuit also detailed Mr. Price's extensive involvement in the conspiracy:

> The PSR, which the district court adopted, established that [Price] was involved in the conspiracy from 1995 to 2001, and during this time he participated in a number of roles. For instance, he allowed Bobby to cook powder cocaine in his house, he kept Bobby apprised of police presence and gang activity, he relayed messages from Bobby to the street-level dealers, and he distributed crack cocaine from Bobby to the street-level dealers. Additionally, the PSR detailed numerous witness accounts about Price's involvement in the conspiracy and his sales of crack cocaine. While the precise quantity of drugs that Price himself distributed may not add up to 4.5 kilograms of crack cocaine, this fact is not dispositive because defendants "convicted of a drug trafficking conspiracy [are] liable for the reasonably foreseeable quantity of drugs sold by [their] co-conspirators." *Seymour*, 519 F.3d at 710–11. Here, we have previously concluded that the CCA street gang was responsible for distributing at least 16 kilograms of crack cocaine throughout the course of the conspiracy's life. *DeWayne Hall,* 600 F.3d at 876. Price was not a regular street-level dealer in this conspiracy. Rather, he was a close confidant of Bobby and acted as a messenger between Bobby and the street-level dealers. As noted by the district court, Price's role allowed him to become familiar with the number of dealers and types and quantities of drugs they were distributing. There was ample evidence from which the district court could conclude that Price was accountable for at least 4.5 kilograms of crack cocaine.

*Davis,* 682 F.3d at 617.

The PSR, which the court adopted, also detailed Mr. Price's extensive involvement in this large drug conspiracy. Specifically, the PSR stated:

5

> 11. Terraun Price was a member of this conspiracy. Price was a close associate of Bobby Suggs, and he allowed Suggs to use his house to cook powder cocaine. Price also conducted counter surveillance for Suggs and other gang members. Price received large quantities of crack cocaine from Suggs on a daily basis, and distributed it to street level dealers.
>
> 12. CCA gang members were responsible for distributing multiple kilograms of crack cocaine during the conspiracy. Numerous witnesses have stated that Price dealt in distribution quantities of crack cocaine for long periods of time. Price also sold drugs in large quantities to street level dealers in the gang . . . .
>
> 14. [FBI Agent Brad Bookwalter] described Terraun Price as one of Bobby Suggs' lieutenants in the CCA street gang. Agent Bookwalter said that Price was a manager/supervisor in this conspiracy, who received large amounts of crack cocaine directly from Bobby Suggs. . . . Price acted as Suggs' eyes and ears on 19th Place, frequently keeping Suggs appraised of police presence and gang activity in the area.
>
> 15. Agent Bookwalter advised that Price also received messages directly from Bobby Suggs, and relayed these messages to the street level dealers. Price directed more than five participants in this conspiracy.

(PSR at 4-5, DE # 1247-1.)

In ruling on a Section 3582(c)(2) motion, a court may not rely on new factual findings that are inconsistent with the original findings made at sentencing. *United States v. Woods*, 581 F.3d 531, 538-39 (7th Cir. 2009). However, "nothing prevents the court from making new findings that are supported by the record and not inconsistent with the findings made in the original sentencing determination." *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *see also Davis,* 682 F.3d at 618 ("In ruling upon [defendant's] § 3582(c)(2) motion, it was entirely appropriate for the district [court] to make new findings of fact as to the quantity of drugs attributable to [defendant], so long as those findings are consistent with the findings from the original sentencing hearing."); *United States v. Jackson*, 365 F. App'x

6

690, 691 (7th Cir. 2010) ("A district court can make new findings when addressing a motion to reduce a sentence when there is ample evidence on the record to support the new finding and that finding does not conflict with the district court's previous conclusion.").

As this court (DE # 1209 at 3) and the Seventh Circuit have recognized, the conspiracy that Mr. Price was involved in was extremely large, as the "drug quantities sold in furtherance of the conspiracy . . . eclipsed 16.9 kilograms of crack cocaine." *Hall*, 600 F.3d at 876; *see also Davis,* 682 F.3d at 617 ("[W]e have previously concluded that the CCA street gang was responsible for distributing at least 16 kilograms of crack cocaine throughout the course of the conspiracy's life."). Additionally, as discussed above, Mr. Price was a major part of this conspiracy, and he was a part of the conspiracy from 1996 to at least 2001. (DE # 1209 at 4); *Davis,* 682 F.3d at 617. "[B]ecause defendants 'convicted of a drug trafficking conspiracy [are] liable for the reasonably foreseeable quantity of drugs sold by [their] co-conspirators[,]" *Davis,* 682 F.3d at 617 (quoting *United States v. Seymour*, 519 F.3d 700, 710-11 (7th Cir. 2008), the court concludes, by a preponderance of the evidence, that it was reasonably foreseeable to Mr. Price that distribution of 16.9 kilograms of crack cocaine occurred, and that he is responsible for that amount.[2] This finding is not inconsistent with the finding the court made at Mr. Price's original sentencing that Mr. Price was responsible for in excess of 1.5 kilograms

---

[2] This is also the amount the Probation Office concluded that Mr. Price is responsible for. (DE # 1247 at 2.)

of crack[3] (Tr. of October 8, 2003, sentencing hearing at 89) or the court's determination, made when the court denied Mr. Price's motion under Amendment 706 (DE # 1209 at 4-5), that Mr. Price was responsible for in excess of 4.5 kilograms of crack.

Under the current guidelines, the 16.9 kilograms of crack that Mr. Price is responsible for results in a base offense level of 38, and a total offense level of 43 (including the two-level increase for the weapons violation and the three-level increase for Mr. Price's role in the conspiracy). U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1); *see also* PSR at 13-14. A total offense level of 43 combined with a criminal history of IV results in a guideline range of life in prison. Thus, Mr. Price's applicable guideline range has not changed. His guideline range under Amendment 750 remains, as it was under Amendment 706, life in prison. Because Mr. Price's guideline range has not been lowered, he does not qualify for a reduction. *United States v. Taylor*, 627 F.3d 674, 676 (7th Cir. 2010). Mr. Price's motion for a reduced sentence (DE # 1346) is therefore **DENIED**.

**SO ORDERED.**

Date: April 8, 2013

                                         s/James T. Moody
                                         JUDGE JAMES T. MOODY
                                         UNITED STATES DISTRICT COURT

---

[3] The court, in fact, found that the evidence showed that Mr. Price was responsible for "*a great deal more* than 1.5 kilograms of crack cocaine base." (Tr. of October 8, 2003, sentencing hearing at 89) (emphasis added).